UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| TALLIS C. MASON, | ) | |
|---|---|---|
| | ) | Case Nos. 1:15-cr-74, 1:17-cv-205 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner Tallis C. Mason's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255[1] (Doc. 41). Respondent, United States of America, opposes Petitioner's motion. (Docs. 43, 59.) For the following reasons, the Court will **DENY** Petitioner's § 2255 motion.

### I. BACKGROUND

On June 23, 2015, Petitioner was charged, in a three-count indictment, with: (1) conspiracy to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B); (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) possession of a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) On December 18, 2015, Petitioner pleaded guilty to Count Two of the indictment for possession with intent to distribute cocaine,

---

[1] Petitioner's initial § 2255 motion was filed *pro se*. However, in its order granting an evidentiary hearing, the Court appointed counsel to represent Petitioner (Doc. 46, at 9), and he has since been represented by counsel.

pursuant to a written plea agreement which contemplated dismissal of the remaining counts. (Doc. 11.) On September 19, 2016, the undersigned sentenced Petitioner to ninety-six months' imprisonment. (Doc. 38.) Consistent with the terms of his plea agreement, Petitioner did not file a direct appeal of his conviction or sentence. (Doc. 11, at 6.) On July 24, 2017, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 41.) On May 30, 2018, this Court denied Petitioner's motion with respect to his claim for ineffective assistance of counsel due to counsel's failure to object to a firearm enhancement under § 2D1.1(b) of the United States Sentencing Guidelines. (Doc. 46, at 9.) However, the Court found Petitioner was entitled to an evidentiary hearing on his claim for ineffective assistance of counsel due to counsel's alleged failure to challenge the drug quantity attributed to Petitioner at sentencing. (*Id.*) On September 19, 2018, the Court held an evidentiary hearing on that issue. (Doc. 56.) After the evidentiary hearing, both parties submitted additional briefing, and this motion is now ripe for the Court's review.

**II.    STANDARD OF REVIEW**

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### III. ANALYSIS

In his motion, Petitioner asserts that he is entitled to relief under 28 U.S.C. § 2255 due to ineffective assistance of counsel for his counsel's failure to dispute the drug quantity attributed to him at sentencing. (*See* Doc. 41, at 6–8.) Petitioner asserts that his counsel failed to investigate a confidential informant's statements and that she also failed to request an evidentiary hearing on drug quantity. (Doc. 41, at 6; Doc. 44, at 2.) Defendant also argues that his counsel was ineffective because: (1) she did not provide him addenda or revisions to his Presentence Investigation Report ("PSR"), including the final PSR, even though he reviewed the initial PSR; and (2) she failed to explain how drug quantity is calculated at sentencing. (Doc. 58.)

To collaterally attack his conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Rodriguez-Penton v. United States*, 905 F. 3d 481, 487 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 694). "[T]he inability [of the petitioner] to prove either of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc).

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, the court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

According to Petitioner's final PSR, Petitioner was found in possession of 218 grams of cocaine and later confessed to obtaining four to five ounces (approximately two to two and one-half kilograms) of cocaine on a monthly basis for approximately eighteen months. (Doc. 35, at 6.) Additionally, a confidential source purchased 420 grams of cocaine from Petitioner through controlled buys over a two-month period. (*Id.* at 4.) These amounts total no less than 2.679 kilograms. However, at sentencing, Petitioner was held responsible for a total drug quantity of no more than two kilograms. (*Id.* at 6.) As a result, the Court calculated his guidelines range as 84 to 105 months' imprisonment. (Doc. 39, at 1.)

Both Petitioner and his former counsel, Myrlene Marsa, of Federal Defender Services of Eastern Tennessee, testified at the evidentiary hearing. Petitioner's testimony focused on what Marsa allegedly did not do: she did not explain to him how his sentence would be calculated based on drug quantity (Doc. 57, at 12); she did not investigate certain statements regarding drug quantity made by a confidential source (*id.* at 31–32); she did not file an objection to Paragraph 18 of the PSR, which confirmed Petitioner's admission to more than two kilograms of cocaine (*id.* at 23); and she did not show him the addenda to, or final version of, his PSR (*id.* at 24–25).

However, Petitioner also testified about some of the things Marsa did do. Petitioner admitted that, during one of her visits, she informed him that the Government wanted to hold him accountable for "1 to 2 kilograms" of cocaine.[2] (*Id.* at 32–33.) Petitioner testified that, when he objected to this amount, his counsel agreed to continue discussions about drug quantity with the Government. (*Id.* at 33.) Petitioner's counsel then returned with a new offer: the Government agreed to a drug quantity of not less than 500 grams, but not more than two kilograms.[3] (*Id.* at 33–34.) Petitioner testified that his counsel advised him to accept the Government's new offer because, if he did not, the Government could "go back up on [his] guidelines." (*Id.*) Petitioner ultimately agreed to accept the Government's offer out of fear that the Government would indeed "go back up on [his] guidelines." (*Id.* at 69.) Finally, Petitioner also admitted that his counsel informed him that if he challenged the drug quantity, a police officer or agent would likely testify that he admitted moving more than two kilograms of cocaine. (*Id.* at 34, 64; *see* Doc. 35, ¶ 18.)

Petitioner's former counsel testified that, although she could not recall if she "handed [Petitioner] copies," she had several discussions with Petitioner about the substance of the various PSRs and addenda in this case. (*Id.* at 80, 83.) She also confirmed that she discussed the issue of drug quantity with Petitioner:

> When I first met with him, he told me that his statement to the police of dealing for 18 months was overstated. We talked about the fact that we might be stuck with that statement. . . . It appears that there was a cooperating -- there was an

---

[2] Although Petitioner testified that the Government initially wanted to hold him accountable for "1 to 2 kilograms," this is unlikely because he ultimately agreed to an amount between 500 grams and 2 kilograms. As the Government pointed out at the hearing, "there's no guideline between 1 to 2 kilograms." (Doc. 57, at 58.) Petitioner most likely intended to say that the Government initially wanted to hold him accountable for over two kilograms.

[3] Again, Petitioner states that the new offer Marsa returned with was "500 grams to 1 kilogram," (Doc. 57, at 33–34), but the pertinent guideline range is between 500 grams and two kilograms. *See* United States Sentencing Guidelines Manual § 2D1.1(c)(7), (8).

5

anonymous source in this case that I don't know anything about, but there was a cooperating witness, and it appears that the government had indicated to me that that person may have backtracked on the quantity of -- the length of time he said he was dealing with [Petitioner], which was part of the reason the government agreed to lower that drug quantity. But I talked to [Petitioner] about the fact that at a sentencing hearing his statement alone might be enough to push it over, and it was worrisome to me -- because he risked over two [kilograms], it was worrisome to me that we pursue an objection rather than a compromise.

(*Id.* at 87–89.)

According to Marsa, Petitioner indicated he did not want a drug quantity over three hundred grams to be attributed to him. Nevertheless, she recommended that he accept the Government's offer because, even without the confidential informant's statements, Petitioner's statement alone put him at risk of being held accountable for over two kilograms.[4] (Doc. 57, at 88, 91.) Marsa testified that she did not object to drug quantity at sentencing because Petitioner had agreed to "a quantity of not [less] than 500 grams but less than 2 kilograms." (*Id.* at 84.) Finally, she testified that she "would have discussed with [Petitioner] the fact that the standard at sentencing is not that high, so it's much harder to overcome that kind of quantity issue at

---

[4] At the evidentiary hearing, Petitioner asserted for the first time that he was "under the influence" during his confession to law enforcement and, as a result, he "did give some false statements and things of that sort . . . ." (Doc. 57, at 53.) However, Petitioner maintains that he "did not say that [he] had been selling anything for 18 months." (*Id.*) While a Petitioner's purported intoxication is typically viewed on a case-by-case basis in light of the totality of the circumstances, *United States v. Montgomery*, 621 F.3d 568, 571–72 (6th Cir. 2010), the Court will not consider this argument because it was not made in Petitioner's § 2255 motion. *Accord Hernandez Portillo v. United States*, No. 1:07-CR-00081-GBL, 2014 WL 3615815, at *25 (E.D. Va. July 17, 2014) ("During the evidentiary hearing . . . Petitioner briefly raised a number of arguments that were not raised in the § 2255 Motion and therefore are not properly before the Court."); *Arbuckle v. United States*, No. 4:06CR198, 2014 WL 1289418, at *3 (E.D. Tex. Mar. 28, 2014) (finding that petitioner waived a claim that he raised for the first time at his evidentiary hearing). Importantly, Petitioner did not present any other evidence to support this assertion at the evidentiary hearing and it was not mentioned in his supplemental briefing. (*See generally* Docs. 58, 60.)

sentencing" and that she would have explained how acceptance of responsibility or obstruction of justice could work against Petitioner if he testified and the Court did not believe him. (*Id.* at 90–91.)

Based on the record before the Court, Petitioner has not shown that he is entitled to relief. First, Petitioner cannot show he was prejudiced by his counsel's failure to investigate statements made by a confidential informant because Petitioner's own statement regarding drug quantity put him at risk of being held accountable for more than two kilograms, an amount greater than that to which he ultimately agreed. (*See* Doc. 35, at 6.)

Second, Petitioner cannot show his counsel was ineffective for failing to object to drug quantity at sentencing. Petitioner's counsel advised him of the consequences of challenging the drug quantity attributed to him, and Petitioner chose to accept an agreement with the Government to be held accountable for between 500 grams and 2 kilograms of cocaine in light of the likelihood of otherwise being held accountable for more based on his own admissions and other evidence. "In short, [P]etitioner received all the information needed to make an informed decision on whether to accept the [agreement on drug quantity] from his counsel of record." *Logan v. United States*, No. 17-1996, 2018 WL 6566665, at *5 (6th Cir. Dec. 13, 2018). And "when a defendant receives the necessary information to make a call, the fact that the ultimate decision is left to him does not render counsel absent or ineffective." *Id.*

Here, the Court finds credible Marsa's testimony that she informed Petitioner that his statement alone could result in his being held responsible for over two kilograms of drugs. Thus, Petitioner faced the risk of a greater guideline sentencing range than what had been proposed in the final PSR. *See* United States Sentencing Guidelines Manual § 2D1.1(c).

Confronted with these circumstances, Petitioner's counsel did what competent counsel must do: she alerted her client to the considerable risks associated with pursuing an evidentiary hearing on the issue of drug quantity and advised Petitioner as to her recommendation. (Doc. 57, at 34, 88, 91.) This qualifies as a strategic choice that falls within the range of Sixth Amendment reasonableness. *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."). And, because Petitioner agreed to be held accountable for between 500 grams and 2 kilograms of cocaine, he cannot show that his counsel was ineffective for failing to object to that amount at sentencing.

Third, although Marsa testified that she does not recall whether Petitioner received physical copies of the addenda to his PSR or the final version of his PSR, she testified credibly that she discussed the substance of each of these with Petitioner. (Doc. 57, at 80, 83.) Thus, Petitioner cannot show that he was prejudiced by this alleged failure to receive copies. *See. e.g.*, *Melicharek v. United States*, No. 07 CR 907 SAS, 2013 WL 6500506, at *4 (S.D.N.Y. Dec. 11, 2013) (describing that petitioner was not prejudiced by failing to receive revised PSR when the revisions to the report were reviewed "in open court in painstaking detail"); *see also Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

Finally, Petitioner's argument that his counsel never explained to him how drug quantity would be calculated at sentencing is belied by his own testimony that he objected to being held accountable for over two kilograms of cocaine, requested that his counsel continue drug-quantity negotiations with the Government, and ultimately agreed to be held responsible for between 500

grams and 2 kilograms of cocaine. (*See* Doc. 57, at 32–34, 69.) Petitioner's testimony on this issue is simply not credible. The Court credits Marsa's testimony concerning the calculation of drug quantity at sentencing. A good portion of Marsa's discussions with Petitioner focused on this very issue, and there was nothing lacking in the way Marsa explained these issues to Petitioner.

Petitioner has identified no other grounds for relief under § 2255. Because Petitioner has not established any basis on which a § 2255 motion may be granted, his motion will be **DENIED**.

IV. **CONCLUSION**

For the reasons stated herein, the Court finds that, on the basis of the record before it, Petitioner is not entitled to relief. Accordingly, the Court **DENIES** Petitioner's § 2255 motion (Doc. 41). Should Petitioner give timely notice of an appeal from this Order, such notice will be treated as an application for a certificate of appealability, which is **DENIED** because he has failed to make a substantial showing of the denial of a constitutional right or to present a question of some substance about which reasonable jurists could differ. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Additionally, the Court has reviewed this case pursuant to Rule 24 of the Federal Rules of Appellate Procedure and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**